IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LEONARD KAMINSKI,<br><br>                Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING ALJ'S DECISION**<br><br><br>Case No.  2:15-cv-00531-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

      Plaintiff Leonard Kaminski filed this action asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying his application for disability insurance benefits beginning on November 26, 2008.  (Pl.'s Opening Br. ("Pl.'s Br.") 1, 12, ECF No. 16.)  In accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to proceed before the undersigned Magistrate Judge.  (ECF No. 13.)  The ALJ determined Mr. Kaminski did not qualify as disabled under 42 U.S.C. §§ 416(i) and 423(d) of the Social Security Act ("Act") from the alleged onset date through the date last insured.  (Administrative R. ("R.") 28, ECF No. 7.)  Having carefully considered the parties' memoranda, the complete record in the matter, and the arguments made at the hearing, the Court AFFIRMS the ALJ's decision.

**PROCEDURAL HISTORY**

      On May 24, 2012, Mr. Kaminski protectively filed a Title II application for disability insurance benefits, alleging a disability onset date of November 26, 2008.  (R. 19.)  Mr. Kaminski has insurance coverage through December 31, 2009.  (R. 19.)  The Commissioner of the Social Security Administration ("Commissioner") denied Mr. Kaminski's application on

1

August 20, 2012, and again upon reconsideration on October 31, 2012.  (R. 19.)  Thereafter, on November 19, 2012, Mr. Kaminski filed a timely written request for a hearing before an ALJ.  (R. 19.)  On January 16, 2014, Mr. Kaminski appeared and testified at an ALJ hearing held in St. George, Utah.  (R. 19.)  Robin L. Generaux testified as an impartial vocational expert ("VE").  (R. 19.)  On February 12, 2014, the ALJ found Mr. Kaminski not disabled from the alleged onset date through the date last insured.  (R. 28.)  On June 29, 2015, the Appeals Council denied Mr. Kaminski's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review.  (R. 1); *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  Mr. Kaminski subsequently filed a complaint with this Court on July 28, 2015 for review of the Commissioner's decision, and the Court held a hearing on July 11, 2016.  (ECF Nos. 2, 29.)

      Based on the five-step evaluation process, the ALJ found Mr. Kaminski has not engaged in substantial gainful activity from the alleged onset date through the date last insured and had the following severe impairments:  "hearing impairment, bilateral visual impairment with diminished field of vision in the outer field of the right eye, and residual back, right knee, and left shoulder pain from shrapnel wounds."  (R. 21.)  The ALJ found these impairments did not meet or medically equal the severity of any of the listings.  (R. 23.)  The ALJ also found Mr. Kaminski had "medically determinable mental impairments of anxiety disorder, a history of post-traumatic stress disorder, and a history of substance abuse," but found these impairments non-severe because they "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  (R. 23.)  At step four, the ALJ found Mr. Kaminski capable of performing a "wide range" of medium work, including "frequent climbing, bending, stooping, balancing, kneeling, crouching, and crawling."  (R. 24, 26.)  Specifically, the ALJ adopted Mr. Kaminski's testimony that he had the capability to lift up to thirty pounds

occasionally and walk and sit for up to an hour at a time.  (R. 25.)  However, the ALJ also restricted Mr. Kaminski's exposure to "excessive noise and extreme cold."  (R. 24.)  Under this RFC, the ALJ found Mr. Kaminski could not perform any of his past relevant work.  (R. 27.)  At step five, the ALJ adopted the VE's testimony that an individual with Mr. Kaminski's age, education, work experience, and RFC could work as a dining room attendant and that a significant number of such jobs existed in the national economy.  (R. 28, 66.)  As a result, the ALJ concluded Mr. Kaminski did not qualify as disabled under the Act from the alleged onset date through the date last insured.  (R. 28.)

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner.  The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the Commissioner applied the correct legal standards.  42 U.S.C. §405(g); *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence."  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[1]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence," and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[1] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards, or the Commissioner fails to demonstrate reliance on the correct legal standards.  See *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## DISCUSSION

**I.     The ALJ Properly Evaluated the Record Evidence.**

Mr. Kaminski argues the ALJ failed to evaluate the record evidence properly because the ALJ misstated Mr. Kaminski's testimony regarding his ability to lift and walk, ignored evidence of his mental impairments, and ignored evidence of his difficulties interacting with others.  (Pl.'s Br. 6-8, ECF No. 16.)  Specifically, Mr. Kaminski takes issue with the ALJ's statements that "[Mr. Kaminski] testified he could lift up to 30 pounds occasionally," and "[h]e can walk for an hour."  (*Id.* at 7; R. 25.)  The transcript indicates that when his counsel asked about the heaviest object he lifts on a daily basis, Mr. Kaminski replied "[p]robably a 20 pound bag of birdseed."  (R. 50.)  The ALJ then pressed Mr. Kaminski on whether he could lift more than twenty pounds if the occasion presented itself, to which Mr. Kaminski replied "[m]aybe 25, 30, but not all day."  (R. 50-51.)  When asked to clarify, Mr. Kaminski stated he could "[p]robably" and "[m]aybe occasionally" lift these heavier amounts but that he "really [did not] know."  (R. 51.)  Similarly, Mr. Kaminski testified he "walk[s] in the park for an hour" despite knowing he will "pay[] the price" sometimes.  (R. 53.)  While Mr. Kaminski later testified he can only stand or walk for "[m]aybe 30 minutes or so" at a time, he also stated he could walk for a mile without any breaks.  (R. 59.)  Under this Court's deferential standard of review, the Court concludes the ALJ reasonably interpreted Mr. Kaminski's testimony regarding his physical capabilities.

Regarding Mr. Kaminski's mental impairments and difficulties interacting with others, Mr. Kaminski contends the ALJ ignored evidence in finding his mental impairments non-severe. (Pl.'s Br. 7, ECF No. 16.)  Specifically, Mr. Kaminski argues the ALJ ignored evidence that in September 2011, his treating physician recommended he undergo a suicide discussion as a result of having suicidal thoughts and his testing positive for depression.  (*Id.* at 8; R. 265, 287-88.) Mr. Kaminski further argues the ALJ neglected evidence of his nightmares and trouble sleeping. (R. 282.)  Finally, Mr. Kaminski argues the ALJ failed to discuss his difficulty with co-workers and the public, which caused him to request a nightshift to avoid contact with other people. (Pl.'s Br. 8, ECF No. 16; R. 54.)

As a preliminary matter, the Court notes that all the record medical evidence of Mr. Kaminski's mental impairments came in September 2011 or later.  (*See* R. 250-434.)  Because Mr. Kaminski's disability insurance coverage expired in December 2009, however, he must establish disability on or before that date.  *See Wilson*, 602 F.3d at 1139 (acknowledging claimant has burden of proving disability prior to the expiration of his insured status) (*citing Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993)); SSR 83-10, 1983 WL 31251, at *8 (Jan. 1, 1983) ("Under title II, a period of disability cannot begin after a worker's disability insured status has expired.").  The Tenth Circuit has upheld a denial of benefits where the record fails to show the claimant received medical treatment in the relevant period between the alleged onset date and the date last insured.  *See Romero v. Barnhart*, 135 F. App'x 172, 175 (10th Cir. 2005) (upholding ALJ's denial of disability benefits despite records showing the claimant received treatment after the date last insured) (unpublished).

In finding Mr. Kaminski's mental impairments non-severe, the ALJ reasoned Mr. Kaminski "has not sought or received any mental health care.  On the contrary, the VA records

show that he declined offered mental health treatment.  The mental status examinations were unremarkable throughout the record." (R. 23.)  The ALJ noted that Mr. Kaminski denied any suicidal thoughts in September 2011, but "merely discussed the possibility of feeling suicidal if he was ever diagnosed with Alzheimer's disease like his mother." (R. 22, 284, 347.)  As a result, the VA did not place Mr. Kaminski on the high risk list for suicide.  (R. 279.)  Mr. Kaminski's testimony supports the ALJ's finding that Mr. Kaminski had no actual suicidal ideations but merely the belief that if he ever received a diagnosis for an incurable disease such as cancer or Alzheimer's, he would not seek treatment.  (*See* R. 70-72.)

Moreover, while an ALJ must consider all of the record evidence, "an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Thus, while the record contains references to Mr. Kaminski's depression, the ALJ discussed the medical evidence of Mr. Kaminski's mental impairments in some detail and found the results of his mental examinations generally unremarkable.  (R. 22.)  The ALJ does acknowledge evidence of difficulty sleeping and difficulty interacting with others but does not find those symptoms debilitating.  (R. 26.)  Furthermore, the ALJ noted that Mr. Kaminski has repeatedly refused mental health treatment, (R. 22-23, 26, 54-55, 280, 286), thus casting doubt on the disabling nature of his mental impairments.  See *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (holding ALJ properly considered the attempts claimant made to relieve his pain in evaluating the severity of claimant's pain); *Huston v. Bowen*, 838 F.3d 1125, 1132 (10th Cir. 1988) (holding an ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief" as a factor in assessing credibility).  Based on Mr. Kaminski's refusal to seek mental health treatment and "the lack of significant . . . mental health findings," the ALJ also found Mr.

Kaminski's difficulty interacting with people not entirely credible. (R. 25-26.) Therefore, the Court holds the ALJ did not err in his evaluation of the record evidence.

**II.     The ALJ Did Not Commit Reversible Error in the RFC Analysis.**

Next, Mr. Kaminski argues the ALJ failed to link his RFC findings to substantial evidence in the record. (Pl.'s Br. 9, ECF No. 16.) Specifically, Mr. Kaminski contends the record does not support the ALJ's finding that he can perform medium work because the record does not support his ability to lift twenty-five pounds frequently and up to fifty pounds – the requirements of medium work. (20 C.F.R. § 404.1567(c); Pl.'s Br. 9, ECF No. 16.) Mr. Kaminski further argues the ALJ failed to account for his dizzy spells when he changes positions, in light of the fact the ALJ found he can engage in frequent bending and stooping. (Pl.'s Br. 9-10, ECF No. 16; R. 24, 44-45.) Although he testified that these dizzy spells last for only about thirty seconds at a time, Mr. Kaminski argues the Rulings define "frequent" as occurring up to two-thirds of the time or approximately six hours in an eight-hour workday, and his dizzy spells associated with such frequent bending and stooping "would clearly impact his ability to work even if the spells only lasted for about 30 seconds each." (Pl.'s Br. 10, ECF No. 16; SSR 83-10 at *6.) Lastly, Mr. Kaminski argues his war-time injuries have worsened with age, and the idea that someone of his age and traumatic history "is still able to competitively perform medium work is not even reasonable." (Pl.'s Br. 10, ECF No. 16.)

In response, the Commissioner argues that given the lack of medical evidence confirming significant physical limitations, the ALJ's RFC finding actually favored Mr. Kaminski in that he found any physical restrictions at all. (Def.'s Answer Br. 12, ECF No. 23.) The Commissioner furthers points out that the ALJ explained "[Mr. Kaminski's] alleged musculoskeletal pain has been treated conservatively and there were no significant orthopedic or neurological findings.

Surgery has not been advised." (*Id.*; R. 26.)  Earlier in the decision, the ALJ found that Mr. Kaminski's "lab tests were normal," "[l]umbar x-rays showed only moderate degenerative changes at several levels," and Mr. Kaminski "pursued only conservative care for pain relief." (R. 22.)  While Mr. Kaminski underwent a right wrist fusion in 1973, the ALJ noted this surgery occurred decades ago and found "no evidence of residual symptoms or any ongoing treatment." (R. 22-23.)  Based on the ALJ's evaluation of Mr. Kaminski's physical limitations and the lack of medical evidence for the relevant period between Mr. Kaminski's alleged onset date and the date last insured, the Court holds the ALJ did not err in limiting Mr. Kaminski to a wide range of medium work as a result of his physical limitations.

Regarding Mr. Kaminski's dizzy spells, the ALJ's decision merely summarizes Mr. Kaminski's testimony that "[h]e alleged dizziness that lasts only about 30 seconds when he bends over" without any discussion of how these dizzy spells would affect the RFC or how credible the ALJ found this testimony.  (R. 24-25.)  For instance, the ALJ fails to reconcile Mr. Kaminski's testimony with his finding that Mr. Kaminski can engage in frequent bending and stooping.  (R. 24.)  As Mr. Kaminski points out, SSR 83-10 defines "frequent" as "occurring from one-third to two-thirds of the time."  SSR 83-10 at *6.  Even under a conservative estimate, Mr. Kaminski could have to stoop and bend for about three hours in an eight-hour work day.  If Mr. Kaminski were to experience a short spell of dizziness each time he changed positions, he would experience multiple episodes in the course of an eight-hour work day that would likely affect his ability to work and stay on task.

However, the Court finds any error regarding the lack of discussion of Mr. Kaminski's dizzy spells harmless because the one medium work job the VE found a person with Mr. Kaminski's RFC can perform only requires occasional bending and scooping.  (R. 66; *Dictionary*

8

of Occupational Titles ("DOT") 311.677-018, 1991 WL 672696.) According to the Dictionary of Occupational Titles, the requirements of a dining room attendant do not include climbing, balancing, kneeling, or crawling, and includes only occasional stooping and crouching. (*DOT* 311.677-018, 1991 WL 672696.) The Rulings define "occasional" as "occurring from very little up to one-third of the time." SSR 83-10 at *5. Even if the ALJ fully credited Mr. Kaminski's testimony that he experienced short dizzy spells every time he changed positions, nothing in the record suggests Mr. Kaminski could not occasionally stoop and crouch. Therefore, the Court holds any error in the ALJ's treatment of Mr. Kaminski's dizzy spells in the RFC analysis harmless. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (finding the ALJ's alleged failure harmless because even with the error corrected, it would not conflict with the RFC).

### III.     The ALJ Did Not Err in His Step Five Analysis.

Lastly, Mr. Kaminski argues the ALJ erred in his step five analysis by failing to find him disabled under Medical-Vocational Guideline ("Grid") 202.06. (Pl.'s Br. 10-12, ECF No. 16.) Mr. Kaminski argues the ALJ's RFC finding "results in a significant erosion of the jobs available at the medium level" as evidenced by the fact that the VE only identified one job someone with Mr. Kaminski's RFC could perform at that level. (*Id.* at 11.) Thus, Mr. Kaminski contends that because he does not have the capability to perform a wide range of medium work the ALJ should have applied a different Grid level. (*Id.* at 11.)

Under SSR 83-12, where a claimant's exertional level falls between two rules that direct opposite conclusions (i.e. "not disabled" under the higher exertional level and "disabled" under the lower exertional level), the ALJ should consider whether the claimant's exertional capacity is "significantly reduced" or only "slightly reduced." SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). The latter "could indicate a sufficient remaining occupational base to satisfy the minimal

9

requirements for a finding of 'Not disabled'"; while the former "could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" *Id.* Significantly, the Tenth Circuit has held that "the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). Where the claimant's characteristics do not precisely match a rule, the ALJ should consult a vocational expert. *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992) ("'[w]here exertional limitations prevent the claimant from doing the full range of work specified in his assigned residual function category,' . . . vocational expert testimony is required to determine 'whether jobs exist for someone with the claimant's precise disabilities.'") (quoting *Campbell v. Bowen,* 822 F.2d 1518, 1523 n. 2 (10th Cir. 1987) & *Ash v. Sullivan,* 748 F. Supp. 804, 809 (D. Kan. 1990)).

Here, that the ALJ found Mr. Kaminski capable of performing a wide range of medium work suggests the ALJ considered Mr. Kaminski's exertional capacity only "slightly reduced," which supports a finding of non-disability in accordance with Grid 203.07. Indeed, the Regulations deem visual, audio, and environmental limitations, like those imposed by the ALJ, as non-exertional restrictions. *Trimiar,* 966 F.2d at 1333; 20 CFR § 404.1545(d). "[W]here nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work." *Trimiar*, 966 F.2d at 1333 (quoting *Campbell,* 822 F.2d at 1523 n.2).

At the same time, that the VE identified only one occupation someone with Mr. Kaminski's RFC can perform constitutes a significant reduction in the occupational base and supports a finding of disability in accordance with Grid 202.06. *See Casey v. Barnhart*, 76 F. App'x 908, 911 (10th Cir. 2003) (holding VE's testimony of a 98% erosion in the light-work

occupational base such that only two light-work jobs existed in the national economy for someone of claimant's RFC constituted a significant reduction in the occupational base that supported a finding of disability under SSR 83-12) (unpublished).  However, the permissive language of SSR 83-12 does not "automatically require[] a disability finding whenever the occupational base at the higher exertional level is significantly reduced." *Id.*  On the contrary, an ALJ fulfills his obligation under SSR 83-12 as long as he consults the VE about the erosion of the occupational base and whether jobs exist in significant numbers in the national economy for someone of the claimant's RFC.  *See id.* (citing *Moore v. Apfel*, 216 F.3d 864, 870-71 (9th Cir. 2000)).  Thus, because the ALJ here fulfilled his obligation to consult a VE about jobs in the national economy for someone of Mr. Kaminski's RFC, and the VE found 221,110 available positions, (R. 68), the Court holds the ALJ did not err in his step five analysis.

## CONCLUSION

For the foregoing reasons, the Court holds the ALJ did not err in his evaluation of the record evidence and in his step-five analysis.  The ALJ also sufficiently discussed Mr. Kaminski's physical limitations and reasonably found him capable of performing a wide range of medium work.  Finally, any error in the ALJ's treatment of Mr. Kaminski's dizzy spells remains harmless in light of the ALJ's adopting the VE's testimony that a person with Mr. Kaminski's RFC could only work as a dining room attendant, which requires only occasional stooping and crouching.  Therefore, the Court AFFIRMS the ALJ's decision.

DATED this 23rd day of September, 2016.

BY THE COURT:

*Evelyn J. Furse*
EVELYN J. FURSE
United States Magistrate Judge